Good morning. May it please the court, my name is Eitan Kaslyanich. I'm representing Bethany Notter in this appeal. In 1995, when Notter was 21 years old, she had a cyst in the third ventricle of her brain at the level of hypothalamus, which required the placement of a catheter, and then eventually they switched that to a shunt to reduce the headache she was having. After that, she went back to college. She went to work. Seven years later, in November of 2002, her condition had worsened. She was no longer able to work. I will now address the ALJ's errors, which require reversal. First of all, the ALJ went through a list of Notter's alleged complaints, the various impairments that she has, and I want to focus first on that one. That was not even a severe impairment. Now, to this day, she is taking many, many medications, including steroids. She has thyroid replacement. She has to take lots of medications because her pituitary gland is impaired, and she's been diagnosed with hypopituitarism. There's no conflict here. That is the fact, and yet the ALJ found that her most significant impairment was not even a severe impairment. Now, he did get past step two, so I'm going to look past that because he found that some of her other impairments were severe and then moved on to the balance of his analysis. The next error by the ALJ involved his treatment of the medical evidence. One significant error involved his failure to even mention the medical evidence from David Overton, who at the time had been Ms. Notter's treating physician assistant, who discussed her hypothalamic pituitary dysfunction that he thought was affecting her asthma, her adrenal gland functioning. She was getting sick frequently. She had infections, allergies, lots of problems which he thought were all related to that. The ALJ doesn't even mention that evidence. There's other evidence I also listed on my brief that he also didn't mention. The next big error by the ALJ involved his treatment of mental health evidence. There were three examining psychologists in this case, Dr. Rydgetz, Dr. Wingate, and Dr. Trowbridge. All three of them found that Notter had significant mark limitations in certain functional areas. The ALJ rejected all of the evidence. None of his reasons even rise to the level of legitimate. I discussed this in my briefs. With Dr. Rydgetz in particular, the ALJ also made the error of misidentifying Dr. Rydgetz, calling him a reviewer instead of an examiner. Of course, a mere reviewer, there could be less weight or quarter to such an opinion. No, he was an examining psychologist. None of the reasons, once again, you've read the briefs. I'm not going to go back into that. He also rejected Dr. Ranheim's opinion. Dr. Ranheim discussed, well, summarizing, he said that she's an exceedingly complex patient with indwelling brain tumor, endocrine and immune dysfunction, multiple allergies and sensitivities, probably undernutrition, all sorts of chemical, lots of problems. The ALJ rejected everything. Finally, Dr. Price's opinion. This one really troubles me. Dr. Price did a constant evaluation. He's a psychiatrist. He found that, first let me say, all those other examining psychologists, the ALJ was giving scant weight to their opinions, no weight to their opinions, limited weight to their opinions. Well, Dr. Price's opinion, the ALJ was giving pretty substantial weight to it, things like that. That was the language he used. He actually discussed it twice. Pretty substantial weight, significant weight, but when it came down to Dr. Price's opinion about Notter's limitations, the ALJ said, well, I'm not going to listen to that. I'm not going to give any weight to that because that's outside his area of expertise. Well, he's a psychiatrist. He's a medical doctor. It was within his area of expertise to discuss how pan-pituitaryism and the somnolence. She was complaining of sleepiness, and it's directly related to her thyroid dysfunction. He thought that was legitimate. He thought that she probably couldn't work, though it was largely because of physical problems, not mental problems. Right. He made a, as far as a psychiatric assessment, he basically said she probably couldn't work, but she may be limited because of her medical condition, right? Right. The ALJ, I think, was incorrect to state that it was outside his expertise. In fact, the Mazda judge agreed with that analysis. That is within his expertise, but found that was not, it was harmless error. The next error, and it's another big error by the ALJ, involved treatment of Notter's testimony. I go into this at length in my opening brief from pages 50 to 56, but not a single one of the ALJ's reasons for rejecting Notter's testimony is convincing. Some of them are fairly egregious. Several of them, the Mazda judge agreed that they were not convincing reasons, they were improper reasons, a secondary gain argument or assertion by the ALJ. Some of them, his analysis is claiming that she was acting on that she was at her hearing when it was a video hearing and he couldn't even tell. There's no way he could have told whether or not she was having trouble breathing before she pulled out her inhaler, said, excuse me, and took a puff on her inhaler. He said, oh, this shows she's being dramatic and acting, and this shows that she's a malingerer. I mean, this is outrageous, really. A lot of the findings from the ALJ's decision have no basis in fact. Finally, there was vocational testimony at the hearing that if Notter's testimony was accepted as credible, there were no jobs she could do. There was also vocational testimony that if the marked limitations opined by all of the examining psychologists were accepted as true, there were no jobs she could do. And I think that based on that, this Court should seriously consider exercising its discretion to award benefits here, because the evidence is clear that the limitations, if your credit is true, the limitations are improperly discredited. Ms. Notter cannot work. I'd like to reserve the balance of my time for rebuttal unless you have any questions. Thank you, counsel. Good morning. Please, the Court. My name is Terry Shea. Is this better? Yes. All right. My name is... You can adjust the podium, too, if you want. Technically, I'm not good at this stuff. Other way. Down or up? Down. Well, I mean, it's up to you. Okay. All right. Let's try with that. All right. Okay. My name is Terry Shea. I'm appearing for the court. Basically, I can see up front this is a very difficult case. It's a situation where this young woman, who's very intelligent and very well-educated, has basically decided that she is disabled. Unfortunately, the record is very all over the place with regard to that. She has many diagnoses for which she has been treated, the treatment appears to But the psychologists all say, or the psychiatrists all say, we think she's disabled because of what her physical condition is, but their knowledge of her physical condition is her report of it. When she's willing to and has frequently gone to the emergency room, which is a good example, and they've said there's nothing wrong. This woman is in no acute distress. She doesn't have a problem with breathing. She doesn't have the asthma acting up. And yet, she's insisting that this is an asthma attack. And half the time, they gave her asthma medication anyway. So, I mean, you've got this very strange case where she's not diagnosed with mental illness or somatoform disorder or something of that nature, although one time at the emergency room, one of the doctors says he suspected Munchausen's disease, which is another version, I believe, of somatoform disorder. But you have the judge who's got all these different opinions. He's got the physical doctor saying, yes, she has the diagnosis, but none of them are saying she can't work. And you have the one-time examiners who listen to what she says about her physical condition and say, well, because of her physical condition, she can't work. So that's the contradiction there. And that's part of why the judge had so much trouble agreeing. You know, it's one of these things, are you disabled because you say you are? Are you disabled because you think you are? And if you're not really diagnosed with something that says, you know, it's kind of all in your head, but it has the same effect as if you are disabled. So it's one of those things. I literally see a young person with so many diagnoses, but nevertheless, the medical record says being treated successfully for depression. Her asthma is in good control. Counsel, as I read the record, and it is a very disturbing case, you begin to think that she does have severe psychological problems if she really believes she has these. Well, and that would be the next step, but none of these psychiatrists have said that. And, you know, as a layperson, yeah, I mean, that's kind of the head I come up with. And the one time the physical doctor in the emergency room kind of said the same thing. But none of these psychiatrists are saying that. They're saying she's disturbed because of her physical health. Were they really asked that? Were they asked? Yes. To diagnose that? Yes. Well, I think the psychologist, I think that's part of what you're expected to do. You are, you do your mental status exam, and if you have time, you do tests, and then you come up with your diagnoses. And the only diagnoses the doctor came up with, Dr. Regatz is a good example, said, you know, really intelligent, oriented, times three, knows all this stuff, but yet he marked her as seriously disturbed because she was depressed because of her physical illness. But her record of treatment for depression doesn't support serious disturbance because of depression. Because it says she's being treated, she's taking this medication, she's doing well. And basically kind of says that through the treatment record. So it's kind of a, you know, you've got a one-time examiner over here saying very disturbed. And even Mr. Overton, in the letter that was not addressed, said, yes, she has all these diagnoses. When she was tested for asthma, it was because her asthma wasn't acting up. But he never said she couldn't work. And there's no indication in the record as to why she was able to work for those years, for a period of time, and why suddenly she could not. She did have a series of menial jobs, which could be very depressing. She had worked at McDonald's as a cook. She'd done a bunch of temp work. But the doctor's saying polypharmacy, she's taking too much medication. You know, we can't talk her out of it. On other occasions, she won't take medication because she doesn't like the medication. But really the fact is, when you look at the record as a whole, she's not going to be holding a job. Don't you agree with that? She's not going to be? Holding a job. Okay, and No, I mean, I'm just saying, I understand the rubric we have to Okay, yeah, and of course, you know, but should disability benefits be based on that basis? That's a tough one. She's probably not going to be holding a job, and there's probably not a job available with these symptoms in the national economy. That's the likelihood. Now, I understand that that's not the test here, but that's, at the end of the day, that's probably the situation. It is an unusual case because of the somewhat conflicting diagnosis. I agree with you. I think we have the argument in hand. Do you have any further questions? I don't. Thank you. Thank you. Rebona? I think that Dr. Price hit the nail on the head here in this case. I'm reading from page ten in my brief, which is page 484 in the transcript, where he talks that claimant's primary problem is almost certainly that of her pituitary dysfunction, secondary to the therapy, often mood stability and fairly commonly hypersomnia can be associated with pituitary problems. Her symptoms are a large part due to this. You see, what makes this difficult to just go and say, oh, well, this is all in her head. Well, actually, it is all in her head. It was a cyst in her brain, and it's caused a lot of problems, and so it's a It is a, you know, pituitary problems are somewhat tricky, but Dr. Price does say basically that if she were able to obtain education, she could work independently, she would probably do well. She has the ability to perform detailed and complex tasks, and then it goes down to her health is not sufficient medically, but he concludes by saying her problems are primarily medical and psychiatric and not self-reported. On the other hand, I think the doctors seem to feel that there's a psychological component, so you don't have a complete, you don't have one doctor saying this is the work limitation. These are, you have pieces of the puzzle. Precisely, and it does make this complicated. It is interesting, though, that there is not a single psychologist. This isn't a case where you have psychologist A says she can work, psychologist B says maybe she can work, and psychologist C says she can't work. You've got psychologist A, psychologist B, and psychologist C all say she can't work, and an ALJ rejecting all of it. It's not like he's saying, well, psychologist D said they can work. I'm resting on that opinion. There isn't any such opinion here. All we have is evidence showing that the combination of her physical and mental problems limit her ability to perform competitive work. That's what this boils down to. I guess the possible problem with that is that they assume the viability of the physical problems in making their diagnosis. That's not entirely true because there is something called adjustment disorder, which I'm not remembering if that was specifically what they identified as the element or the cause of her depression, but if you've got serious physical problems that you don't know how to cope with and that are overwhelming you, it will cause mental health symptoms, and that's what they were identifying through the mental status exams and through her mental status. She appeared to have the mental problems, so that really is not just based on the physical. Thank you, counsel. Interesting case. Thank you both for your arguments this morning, and the case just heard will be submitted for decision.
judges: Fletcher B. , Tashima, Thomas